**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**ENTERPRISE FOUNDRY, INC. and John Legendre, Defendants.**

**Misc. No. 83–124 P.**

United States District Court, D. Maine.

March 1, 1984.

Albert H. Ross, Regional Sol., Merle D. Hyman, U.S. Dept. of Labor, Office of the Sol., Boston, Mass., for plaintiff.

Jack Simmons, Steven Silin, Berman, Simmons & Goldber, P.A., Lewiston, Maine, for defendants.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S PETITION FOR ADJUDICATION OF CIVIL CONTEMPT

GENE CARTER, District Judge.

### I. Introduction

Section 8(a) of the Occupational Safety and Health Act of 1970 (OSHA or Act) empowers agents of the Secretary of Labor (Secretary) to search the work area of any

employment facility within the Act's jurisdiction. 29 U.S.C. § 657. The purpose of the search is to inspect for safety hazards and violations of OSHA regulations. No search warrant or other process is expressly required under the Act. The United States Supreme Court has, however, addressed the question of whether a search warrant is required in order to implement the inspection provisions of the Act over the objection of the employer. The Court held in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) that the public policies sought to be implemented by the inspection provisions of the Act and the difficulties of enforcement encountered by the Secretary "do not suffice to justify warrantless inspections under OSHA or vitiate the general constitutional requirement that for a search to be reasonable a warrant must be obtained." *Id.* at 324, 98 S.Ct. at 1826.

It is significant that the Court in mandating the requirement of a warrant in order to accomplish inspection over the objections of an employer pursuant to the Act placed special emphasis upon "the incremental protections" thought to be associated with the issuance of a warrant by a detached decision-maker not involved directly in the administratively-based effort to conduct the inspection. *Barlow's*, 436 U.S. at 322, 98 S.Ct. at 1825.

## II. *Historical Facts*

The record before this Court consists of the record made before the United States Magistrate on the application for the issuance of the administrative search warrant here in question and the affidavits of James R. Mitchell,[1] the Plaintiff's Compliance Safety and Health Officer, John Legendre, the President of the corporate Defendant, and Jack Simmons and Steven Silin, counsel for the Defendants. On the basis of this record the Court finds the following to be the facts pertinent to the resolution of the controversy presented by

the Plaintiff's Order to Show Cause and Petition for Adjudication of Civil Contempt filed with the Court on December 2, 1983.

The Defendant, Enterprise Foundry, Inc., is a private corporate enterprise which employs approximately 51 persons and is engaged in the manufacture of molded cast-iron products at a work site maintained at South Street, Lewiston, Maine. The Defendant, John Legendre, is the corporate president of Enterprise Foundry, Inc. Raymond A. Legendre is the Vice-President of the corporation and Bertrand Desrochers is its Office Manager.

James R. Mitchell is a duly authorized Compliance Officer of the United States Department of Labor, Occupational Safety and Health Administration. As a result of the activities of Mr. Mitchell, and of other OSHA officials, corporate Defendant's workplace at South Street in Lewiston, Maine was chosen to be inspected in accordance with OSHA's Scheduling System for Programmed Inspections as described in OSHA's Field Operations Manual Instructions for Inspection Scheduling, as that is modified by a tract entitled "Alternative Method for Targeting Health Inspections." The selection of the work site for inspection was in accordance with OSHA's overall policy that inspections conducted as programmed inspections be in the "high hazard" sectors of employment. Enterprise Foundry, Inc. was determined by OSHA authorities to be an employer in a high hazard industry.

Mr. Mitchell appeared at the premises of the corporate Defendant on October 13, 1983, at approximately 2:20 P.M. for the purpose of inspecting the work site and investigating the working conditions in order to determine if there was compliance with OSHA-established standards. He presented his credentials to the President, Mr. Legendre, and informed the President and Mr. Desrochers, the Office Manager, of the purposes of his inspection, the scope

---

1. The record contains two such affidavits by Officer Mitchell. The first is the Application to the Magistrate for issuance of the warrant, dated November 8, 1983, which is sworn to by Officer Mitchell. The second is his affidavit to this Court in support of the Plaintiff's Petition for Adjudication of Civil Contempt.

of the inspection and the method used to select the corporate Defendant for the inspection. The corporate officers then present allowed him to conduct an opening conference and to inspect the corporate Defendant's OSHA 200 Log. It was mutually decided that it was too late in the day to begin the walk-around inspection since the workday at the work site ended at 3:30 P.M. Mr. Mitchell agreed to do the walk-around inspection the next day.

He returned to the establishment the following day, October 14, 1983, at approximately 10:10 A.M. On arriving in the office area he was informed by President Legendre that he, Mr. Mitchell, would not be permitted to conduct the inspection of the work site "without a warrant to do so." He informed Mitchell that this action was in accordance with established corporate policy since 1980 and provided Mr. Mitchell with a copy of that policy. Mr. Mitchell then left the establishment, indicating to President Legendre that he would return with a warrant.

Thereafter, on November 8, 1983, Mr. Mitchell filed with the United States Magistrate, the Honorable D. Brock Hornby, an "Application for Inspection Warrant Under the Occupational Safety and Health Act." The application was made by Mr. Mitchell under oath and recounted the substance of the immediately previous factfindings. In addition, he stated that by making the application he sought to gain entry of himself and other authorized United States Department of Labor, Occupational Safety and Health Compliance Officers to the Defendant's work site for the purpose of conducting an inspection pursuant to 29 U.S.C. § 657.

The Application states that the inspection is to be conducted "within regular working hours," that it is to begin "as soon as practicable after the issuance of this Warrant," and that the inspection "will be completed with reasonable promptness." Application to the United States Magistrate, ¶ 5. The Application further states, "I do not believe that access to the premises at this time will cause any hardship to the employer or unduly interfere with the conduct of the business of any of the affected employees." *Id.* at ¶ 6. The Application concludes with a representation that a return will be made to the Magistrate at the completion of the inspection and with the citation of authorities for the issuance of the warrant. The Application makes no reference whatever to the utilization of any individual sampling devices.

Attached to the Application made to the Magistrate was a partial copy of OSHA's Field Operations Manual Instructions for Inspection Scheduling entitled "Chapter II—Compliance Programming." The attached extract bears page numbers II–1 through II–3, IX–1 through IX–3, and IX–7 through IX–10. This document bears identification markings as "Appendix A1" and is specifically referred to in the Application. Also attached and identified as "Appendix A2" is a modification of Appendix A1 entitled "Alternative Method for Targeting Health Inspections," which is also referred to specifically in the Application both by title and by identification number. Appendix A2 bears as a frontis page a memorandum for area directors from Donald E. MacKenzie on the subject of "Alternative Method for Targeting Health Inspections" and appears to be the memorandum by which transmittal of the ensuing pages of Appendix A2 were conveyed to OSHA's area directors.

Also attached to the Application, as submitted to the United States Magistrate, is a document entitled "Plant Inspections by Governmental Agencies." This document is the statement of "established corporate policy since 1980" given by President Legendre to Mr. Mitchell on October 14, 1983, as a basis for the refusal to permit the inspection of the work site without issuance of a warrant and referred to as "Exhibit B" in the Application. Application at ¶ 3. Also before the Magistrate at the time he acted on the Application was the warrant proposed by OSHA for issuance, to which was attached a portion of pages 32 and 33 of a prior edition of the Code of Federal Regulations reflecting a

prior form of Regulation § 1903.7. The language of subsection (b) of this regulation reads as follows:

Compliance Safety and Health Officers shall have authority to take environmental samples and take or obtain photographs related to the purpose of the inspection, employ other reasonable investigative techniques, and question privately any employer, owner, operator, agent or employee of an establishment. (See § 1903.9 on trade secrets.)

[INTERPRETATIVE NOTE: As used herein, the term "employ other reasonable investigative techniques" includes, but is not limited to, the use of devices to measure employee exposures and the attachment of personal sampling equipment such as dosimeters, pumps, badges and other similar devices to employees in order to measure their exposures.]

The foregoing reference is the only reference to utilization of individual sampling devices contained in the materials before the Magistrate at the time he acted on the Application.[2]

On November 8, 1983, the United States Magistrate issued the warrant requested by Mr. Mitchell. On November 9, 1983, Mr. Mitchell returned to the corporate Defendant's premises and presented the warrant with the attached version of Regulation § 1903.7 containing the "INTERPRETATIVE NOTE" to President Legendre and Mr. Desrochers. There was not at that time attached to the warrant, as there was to the application, any of the written program description providing the standards by which Enterprise Foundry, Inc. had been selected by OSHA for a site inspection. Mr. Mitchell was permitted to conduct the "walk-around" inspection.

President Legendre, Raymond A. Legendre, and Mr. Desrochers accompanied Mr. Mitchell on the walk-around inspection which lasted for approximately thirty minutes during normal working hours. The corporate officials declined the request of Mr. Mitchell to take work samples from the premises on the basis of their understanding that he had no authority to remove sample materials from the premises. The corporate officers refused to permit the private interviews of employees "because such a request would unreasonably interfere with our work production and was unreasonable in that we had the right to refuse such an inspection." Legendre Affidavit at ¶ 7. The corporate officers be-

2. In the copy of the Magistrate's docket in the proceedings before him, which was submitted to this Court as an attachment to the Plaintiff's Order to Show Cause and Petition for Adjudication of Civil Contempt, there appears attached to the application to the Magistrate a page from the Employment Safety and Health Guide headed at the top as "Exhibit A" and bearing the title "Occupational Safety and Health Act." The document appears to be page 3023 of the Guide and bears other identifying marks reading "§ 1903.8 ¶ 6512.5" in the lower right-hand corner. This document does not, however, appear in the Magistrate's own record of which this Court takes judicial notice in the proceedings on the application.

The document contains the following text:

§ 1903.7 Conduct of Inspections.

(a) ....

(b) Compliance Safety and Health Officers shall have authority to take environmental samples and to take or obtain photographs related to the purpose of the inspection, employ other reasonable investigative techniques, and question privately any employer, owner, operator, agent or employee of an establishment. (See § 1903.9 on trade se-

crets.) As used herein, the term "employ other reasonable investigative techniques" includes, but is not limited to, the use of devices to measure employee exposures and the attachments of personal sampling equipment such as dosimeters, pumps, badges and other similar devices to employees in order to monitor their exposures.

[§ 1903.7(b) amended at 47 F.R. 55478, December 10, 1982, effective January 10, 1983.]

(c) In taking photographs and samples, Compliance Safety and Health Officers shall take reasonable precautions to ensure that such actions with flash, spark producing, or other equipment will not be hazardous. Compliance Safety and Health Officers shall comply with all employer safety and health rules and practices at the establishment being inspected, and they shall wear and use appropriate protective clothing and equipment.

(d) The conduct of inspections shall be such as to preclude unreasonable disruption of the operations of the employer's establishment.

The Court finds that this document was not before the Magistrate at any time prior to his acting on the application.

lieved that they had the right to accompany the inspection officer during any employee interview. They told Mr. Mitchell that he could talk with their employees in their presence in a manner which would not unreasonably interfere with work production.

Mr. Mitchell told Legendre that his refusal to allow him to obtain bulk samples of work materials or to interview employees in private would be considered the equivalent of a refusal to allow an inspection according to Department of Labor policy and procedure. He pointed out that the warrant itself specifically allows for private employee interviews and the taking of area and environmental samples. Mr. Legendre still refused to allow the taking of samples or the conducting of interviews. Mr. Mitchell then left the premises. After Mr. Mitchell left the premises, President Legendre called the company attorney, Mr. Simmons, and sent him, the same day, a copy of the warrant.

The corporate officers met the following day, November 10, 1983, with Mr. Simmons and his associate, Mr. Silin. They were advised by the attorneys to allow the search. They were informed that in the opinion of the attorneys the warrant was technically invalid because it failed to specify the probable cause basis on which Enterprise Foundry was chosen for a site inspection. They were also told that this was a technicality which the OSHA officials could easily remedy. They were told that the inspecting officer had the right to take samples as well as interview employees out of their presence. They were informed by the attorneys that the scope of the OSHA official's right to inspect "was very broad and limited only by the bounds of reasonableness." Legendre Affidavit at ¶ 10. They were also told that the inspecting OSHA officer could not unreasonably interfere with work production.

The corporate officers also discussed with the attorneys the use of employee monitoring devices by the inspecting officials. President Legendre believed that such devices would "constitute an unreasonable interference with our work in that they posed a potential safety hazard given the dangerous nature of our work and that the employees found them to be burdensome and distracting." Id. at ¶ 11. Legendre based his conclusion upon prior experience in October of 1977 when such devices were utilized in a voluntary inspection of the premises by an engineering consulting firm. The meeting with counsel concluded with a determination that the corporate officers "would allow a full and complete inspection within the terms of the warrant, reasonably construed, with the exception of allowing employee monitoring devices." Id. at ¶ 13. They had also concluded that they would allow testing of air quality to be done by other means than employee monitoring devices, such as stationary devices or by OSHA personnel. Id. The corporate officers reached these decisions in reliance upon legal advice of their counsel.

By November 14, 1983, attorney Merle Hyman of the Office of the Solicitor, U.S. Department of Labor, Boston, had been advised by the corporate Defendant's counsel that the corporate Defendant would comply with the warrant and permit the OSHA inspection to take place. Corporate counsel requested that the inspection not begin prior to Wednesday, November 16, 1983, because the management officials were unavailable until then. She agreed.

On November 16, 1983, Mr. Mitchell went again to the work site of the corporate Defendant and was allowed to conduct the initial portion of the walk-around inspection. He was accompanied by the corporate officers as before. The corporate officers answered fully any questions he asked, provided requested technical information and allowed samples to be taken and employee interviews to be conducted as requested. The corporate officers offered Mr. Mitchell the use of their private offices for this purpose. They also explained to Mr. Mitchell the company's operations and foundry operations generally. Legendre Affidavit at ¶ 15.

The walk-around inspection lasted approximately four hours, at the conclusion

of which Mr. Mitchell indicated that he wanted to come back to employ individual air sampling devices which would be attached to employees during work production. Mr. Mitchell advised Mr. Legendre that the sampling devices were relatively small and would not interfere with the employees' job performance. Attorney Silin, who was present at this inspection at the request of the corporate officers, informed him that

> that was the one request that would not be complied with on the ground that such devices would be burdensome in terms of interfering with job performance and would pose a potential safety hazard and because there was considerable uncertainty with respect to whether such procedures were altogether unreasonable and outside the scope of the statute.

*Id.* at ¶ 16. He said the OSHA officials would be permitted to conduct the sampling process with company approval by other means of sampling, including the presence of OSHA personnel for that purpose. Following the discussion of the request to use individual sampling devices the corporate officers continued to provide additional technical data to Mr. Mitchell and to answer additional questions, providing him with the names of suppliers of materials used in the work at the work site so that a component analysis could be made of them.

The Plaintiff filed its Petition for Adjudication of Civil Contempt and Order to Show Cause thereon with this Court on December 2, 1983. Hearing and oral argument were held by the Court on January 6, 1984.

### III. Discussion

#### A.

The Defendants resist favorable action on the Plaintiff's petition for adjudication of civil contempt on two bases: (1) that the warrant pursuant to which the Plaintiff's representatives acted is invalid, and (2) because the Defendants acted in good faith

and for good legal cause in refusing to permit the use of individual air sampling devices in the course of the inspection. The Court concludes that the warrant in this case is invalid because it did not show that the Defendants' premises had been selected for an administrative search "on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources." *Barlow's*, 436 U.S. at 321, 98 S.Ct. at 1824. The Court also concludes that the warrant did not authorize the utilization of individual air sampling devices in the course of the contemplated administrative search. It is unnecessary, therefore, in order to decide the case, for the Court to consider the issue of the individual Defendant's good faith.

The opinion of the United States Supreme Court in *Barlow's*, 436 U.S. 307, 98 S.Ct. 1816, teaches on five points that are pertinent here:

(1) That OSHA "is unconstitutional insofar as it purports to authorize inspections without warrant or its equivalent." *Id.* at 325, 98 S.Ct. at 1827; [3]

(2) That "[f]or purposes of an administrative search ... probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also upon a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a *particular* [establishment].'" *Id.* at 320, 98 S.Ct. at 1824 (emphasis added) (*quoting Camara v. Municipal Court*, 387 U.S. 523, 538, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967));

(3) That "[a] *warrant showing* that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources" is necessary to protect the employer's Fourth Amend-

---

**3.** The Supreme Court recently reaffirmed this holding in *Michigan v. Clifford*, —— U.S. ——, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984).

ment rights. *Id.* 436 U.S. at 321, 98 S.Ct. at 1824 (emphasis added);

(4) That a warrant must be based upon "assurances from a neutral officer that the inspection *is reasonable under the Constitution,* is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria." *Id.* at 323, 98 S.Ct. at 1825. (emphasis added);

(5) That a warrant when displayed by the officer as his authority to inspect and search, must "then and there advise *the owner* of the scope and objects of the search, *beyond which limits the inspector is not expected to proceed.*" *Id.* (emphasis added).

From these teachings may be extrapolated a number of principles to be applied in judging, in a particular case, the validity of a warrant for administrative inspection or search. First, the standard of so-called "probable cause" requires that the search to be conducted meet "reasonable legislative or administrative standards" for the conduct of the search "with respect to a *particular* location." This means that in addition to establishing the reasonableness of the standards *per se,* it must also be shown that the application of the standards *to the particular premises to be inspected* is reasonable. This requirement is not satisfied by showing only that an administrative standard has been determined in some remote, bureaucratic fastness to be reasonable *in the abstract.* The court in *Barlow's* specifically states that the reasonableness determination must be satisfied " 'with respect to a particular [establishment.]' " *Barlow's* at 320, 98 S.Ct. at 1824 (*quoting Camara,* 387 U.S. at 538, 87 S.Ct. at 1735). The application of the criterion of reasonableness is to be concrete, factual and particular. An abstract determination of reasonableness is not sufficient.

■ Second, a valid warrant can issue only upon a showing to a neutral officer (here, the United States Magistrate) sufficient to satisfy the officer that the inspection proposed is "reasonable under the Constitution." *Barlow's* 436 U.S. at 323, 98

S.Ct. at 1825. That requirement is intended to carry out the "basic purpose" of the Fourth Amendment, which is " 'to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.' " *Id.* at 313, 98 S.Ct. at 1820 (*quoting Camara,* 387 U.S. at 528, 87 S.Ct. at 1730). To serve that purpose, the determination of reasonableness must be oriented to the specific factual aspects of the exercise of the Government's intrusive authority in inspecting the particular premises. The type of inspection activity that may be reasonable in one workplace may be thoroughly unreasonable when undertaken in the context of circumstances existing at a different workplace. The Fourth Amendment requires that the neutral officer evaluate the reasonableness of the contemplated search activity in respect to the factual conditions in which it is going to occur.

■ Third, it is not sufficient alone that the neutral officer has in fact made a determination that the site's selection for inspection has been achieved by a general plan encompassing neutral sources of selection. The warrant itself must reflect that such a determination has been made. Further, the warrant must contain some adequate description of the content of the administrative plan.

■ Fourth, it is required that the owner of the premises on which the inspection or search is to be conducted be advised *by the warrant* of the scope and objects of the search. The purpose of this requirement is that the owner may know, when confronted with the warrant, of the authorized limits of the search which the executing officer may not exceed.

■ Here, the warrant as issued by the Magistrate does not state that the Magistrate has made a determination that the Defendant's premises were selected for inspection pursuant to any plan "containing specific neutral criteria." *Barlow's,* 436 U.S. at 323, 98 S.Ct. at 1825. Neither it nor the attachments to it state what the criteria were. It does not describe any

aspect of the plan by which the selection was in fact made. Defendants contend that some such recital is required in the warrant in order for it to be validly issued. The Plaintiff cites the case of *Donovan v. Wollaston Alloys, Inc.*, 695 F.2d 1 (1st Cir.1982), for the proposition that no such content is required to be contained *in the warrant* under *Barlow's*. That reliance is misplaced. The court's opinion in *Wollaston* reflects that an Exhibit I was there attached to the warrant. *Id.* at 2. That attachment was described as "a two-page letter from OSHA to the employer." *Id.* The court said, "[t]his letter stated that OSHA had selected the company for inspection as part of the agency's program for high-hazard safety inspections *and then it briefly described that program selection process.*" *Id.* (emphasis added). In deciding the validity of the warrant, the court specifically adverted to the language in *Barlow's* noting that protection of Fourth Amendment values depends upon a showing *in the warrant* that site selection for inspection has been achieved by the use of a proper administrative plan. *Wollaston*, 695 F.2d at 5. The court went on immediately to state:

> These probable cause requirements have been met in this case. The inspection program descriptions attached to the warrant application and to the warrant itself both describe the program in detail, satisfying a specific requirement the Supreme Court seemed to impose in *Barlow's* ... and provided enough information to show that *Wollaston's* selection was not arbitrary.

*Wollaston*, at 5 (citation omitted).[4] The court's language and analysis is very far from a determination that no recital in the warrant of the basis of the site's selection for inspection is required. Rather, it is a holding that the requirement was satisfied. The clear implication is that the *Barlow's* language creates a requirement of such a recital in the warrant, or its attachments, at the time of execution. The plain meaning of the Court's language in *Barlow's* underlies that implication. The United States Supreme Court required that the neutral officer make a probable cause determination that the standards by which the site is selected for inspection are "reasonable ... administrative standards," *Barlow's*, 436 U.S. at 320, 98 S.Ct. at 1824 (*quoting Camara*), and that the inspection is "reasonable under the Constitution." *Id.* at 323, 98 S.Ct. at 1825. *Then* the court says that in order to protect an employer's Fourth Amendment rights "a warrant showing," *id.* at 321, 98 S.Ct. at 1824, that those determinations have been made is necessary.

Reason tells us that this must be so. The reality is that the employer is confronted by the executing inspector with the warrant in hand, demanding immediate entrance to the premises. He has no way to determine authoritatively, on the spot, if a determination of site selection for inspection has been made by a neutral officer. Nor can he judge the propriety of such determination, if one is made, unless the warrant (or its attachments) so recite and give some description of the content of the administrative plan utilized. He is confronted with the obligation to submit the premises to inspection *if* the warrant is valid (and may be subjected to penalties if he does not do so) and has the constitutional right to prevent the inspection *if* the warrant is invalid. Yet, if the Plaintiffs' contention is accepted, he is to be deprived of any informed basis upon which to judge the warrant's validity. To place the employer in such a circumstance can scarcely be said to protect his Fourth Amendment rights. Rather, it would place the inspector in a position to snatch those rights away from the employer by coercing an

---

**4.** Most interestingly, in the conclusion of the same paragraph the court notes that *Wollaston* "is not a case like *Marshall v. Weyerhaeuser*, 456 F.Supp. 474, 479–80, 482–83 (D.N.J.1978), *in which there was no indication that the employer was selected as a result of any systematic nonar-* *bitrary process.*" *Id.* The *Weyerhaeuser* case dealt exclusively with the reasonableness of the showing that site selection of the employer by OSHA occurred there "in a neutral manner." *Weyerhaeuser*, 456 F.Supp. at 484.

uninformed exercise of hit-or-miss judgment. Rights thought to be significant enough to deserve constitutional protection cannot be subjected to such cavalier treatment. The United States Supreme Court imposed the warrant requirement in *Barlow's* in order to prevent just such a result.

*Barlow's* clearly requires that the warrant or, at the very least, its attachments [5] recite that the selection of the premises has been determined by the authority issuing the warrant to have been reasonably done pursuant to an administrative plan derived from neutral sources and to give an adequate description of that plan and the sources. *Wollaston* clearly recognizes the requirement. Yet, this warrant does not meet that requirement. It was, therefore, ineffective to confer any legitimate authority upon Mr. Mitchell to conduct an inspection. Accordingly, the corporate officers acted within their rights in resisting any aspect of an inspection, pursuant to it, including the use of personal air sampling devices.

### B.

The specific challenge to the warrant here made has validity in a narrower compass. The actual jostling point between the OSHA officers and the Defendants in the course of the execution of the warrant was the insistence of the officers that they be permitted to use individual air sampling devices to be attached to individual employees. Though the Defendants acceded to the officers' activities in execution of the warrant in all other respects, when, as shown above, they might have validly refused to permit those inspection activities, they adamantly refused to allow these devices to be installed on their employees. Thus, completely aside from any general issue of the validity of the warrant, there is posed the narrower issue of whether the use of such devices as an inspection activity was legally authorized by the warrant.

 It is required, *inter alia*, by *Barlow's* that the warrant be based upon "assurances from a neutral officer that *the* inspection is reasonable under the Constitution." 436 U.S. at 323, 98 S.Ct. at 1825 (emphasis added). This requirement, when read in conjunction with a related requirement of *Barlow's* that the display of the warrant must advise the owner of the premises "of the scope and objects of the search, beyond which limits the inspector is not expected to proceed," *id.*, can only mean that it is necessary that the neutral officer be presented with the specific activities that are to be conducted as incidents of the execution of the warrant to accomplish the search/inspection. Further, he must determine from a sufficient and fact-specific showing that such activities (1) are reasonably necessary to achieve the objects of the inspection, and (2) do not unreasonably burden the owner's use of the premises or unreasonably interfere with the activities legitimately carried on there. Only thus may the inspection be found to be "reasonable under the Constitution." *Id.* Only thus can be implemented the substance of the requirement that the warrant reflect articulation of "the scope and objects of the search." *Id.* Only thus can the warrant suffice to advise the owner of those limits upon the inspector's activities "beyond which ... the inspector is not expected to proceed." *Id.*

 If these requirements are given any force whatever in reviewing the circumstances of the issuance of the warrant here in question, it cannot be said that this warrant contains a valid basis for the conduct of the inspection *by the use of individual air sampling devices.* A consideration of the record before the Magistrate (either as represented by the evidence presented to this Court, or by the official

---

**5.** In this case, the Court does not reach, and intimates no opinion, on the issue of whether it is sufficient to perform this constitutionally-based advisory function of the warrant by the use of attachments to it as opposed to appropriate recitals integrated into the body of the warrant. The *Wollaston* opinion indicates acceptance of the practice, but it does not appear that any challenge was made to it in that case. Thus, the practice is not necessarily validated by *Wollaston.* The issue may, in any event, rest for another day and an appropriate case.

file of the Magistrate in the proceedings for issuance of the warrant, of which this Court takes judicial notice, *Kinnett Dairies v. Farrow*, 580 F.2d 1260, 1278 n. 33 (5th Cir.1978), shows clearly that no fact-specific showing was made to him concerning the use of the devices. In fact, it is clear on the record that no issue as to the propriety of the use of such devices in executing the warrant was raised in those proceedings and that no such issue was even considered by the Magistrate.

The application made by Officer Mitchell for the warrant contains no reference whatever to the use of the devices. The closest factual allusion in the application to the use of such devices is the statement, "I do not believe that *access to the premises* at this time will cause any hardship to the employer or unduly interfere with the conduct of the busienss of any of the affected employees." Application, at ¶ 6.[6] It is obvious that a proper determination of the reasonableness of allowing the inspector access to the premises (e.g., the right to enter upon them) falls far short of a determination of the reasonableness of the specific activities which he may conduct in carrying out the inspection once he is there. There is no specific fact shown in the Magistrate's record from which he *could* take notice that the officers even contemplated using personal sampling devices in execution of the warrant sought. Further to the point, there is a total lack of any factual showing from which the Magistrate *could* have judged the reasonableness of the use of such devices in the particular circumstances of the contemplated execution of the warrant, even had he been asked to do so.

The reason for this lack of any sufficient showing on this point is apparent. The warrant was sought by Officer Mitchell, as the application shows, in response to the Defendants' denial to the officers of access to the work area of the premises. The officer himself did not, according to the

record made before the Court, make any decision to employ the devices until after the warrant issued and access had been gained to the work area. It is unlikely that the use of the devices was even contemplated by Officer Mitchell at the time the Magistrate issued the warrant. In any event, the record establishes without any doubt that no use of the devices was mentioned to the Magistrate.

Clearly, also, no showing was made as to the reasonableness of the use of the devices in the circumstances of an inspection of the premises. Further, since the officer had not at that time gained general access to the premises, it would have been impossible for the officer to make such a showing. The record does not disclose that he then had any *particularized* knowledge of those areas of the Defendants' premises where he subsequently sought to employ the devices.

None of the attachments to the application for the warrant contain even a reference to the use of such devices. The content of these documents relates only to the methodology of "compliance programming," that is, the method of *selecting sites for inspection* and the criteria by which they are *to be scheduled for inspection* and the procedure employed to follow up on inspections. Some other administrative functions of OSHA are also addressed in those attachments. However, none of them have anything to do with, and cannot be construed to imply even any reference to, the use of the devices here in question.

Plaintiff here contends that the reference to the "Interpretative Note" in the copy of the page from the Code of Federal Regulations, *attached to the warrant as issued,* is sufficient to authorize the use of these devices in executing this warrant. This strained argument has no merit whatever. The "Interpretative Note" simply states that *as used in Regu-*

6. The Court indicates no opinion whatever on the issue of the sufficiency of such a conclusory assertion, unaccompanied by any supporting facts, as a basis for a determination by the Magistrate or other neutral officer that *access* to the premises is reasonable under the particular circumstances. It is not necessary for the Court to reach that issue.

*lation § 1903.7(b),* "reasonable investigative techniques" include "the use of devices to measure employee exposure and the attachment of personal sampling equipment ... to employees in order to measure their exposure." Warrant, at 3. The reference can be viewed as no more than definitional of a term used *in the regulation.* As a matter of substance, the reference is no more than a generalized policy determination of the Secretary that in appropriate circumstances the use of such devices *may be sought* by the Secretary. The reference, by itself, cannot be taken to be (1) a positive indication that the use of such devices is sought in all cases, (2) notice to the neutral officer that issuance of a warrant "[p]ursuant to the Occupational Safety and Health Act, 29 USC Section 651, 657, 658 [sic], 29 CFR Sections 1903.3, 1903.4 and 1903.7 ....", Warrant, at 1, will be contemplated to authorize use of the devices if some OSHA inspector subsequently decides he would like to do so, (3) a request to the neutral officer to authorize the use of the devices, or (4) any showing of the reasonableness of the use of the devices in the particular circumstances even if contemplated.

Finally, the Secretary's policy decision as reflected by the "Interpretative Note," whatever its effect, cannot relieve the Secretary, when seeking issuance of a warrant by a neutral officer, of his legal obligation under *Barlow's* to make a fact-specific showing from which the neutral officer can determine that the use of the devices in the specific circumstances of the execution of the warrant "is reasonable under the Constitution." *Barlow's,* 436 U.S. at 323, 98 S.Ct. at 1825. The scope of an administrative search "may be no broader than reasonably necessary to achieve its end." *Michigan v. Clifford,* — U.S. —, 104 S.Ct. 641, 647, 78 L.Ed.2d 477 (1984).

Clearly, this warrant was not issued in contemplation of the use of the individual sampling devices later sought to be used by Officer Mitchell. The Magistrate made no determination of the constitutionally-based reasonableness of their use in its execution and he had before him no sufficient show-ing to allow him to do so. The warrant as here issued did not authorize the use of those devices. For this further reason, then, the Defendants were well within their legal rights in refusing to permit the use of the devices as an incident of the search/inspection even were the warrant otherwise valid.

Accordingly, it is,

ORDERED that:

(1) Plaintiff's Petition for Adjudication of Civil Contempt be, and is hereby, DENIED, and

(2) The Warrant for Inspection Under the Occupational Safety and Health Act issued herein by the United States Magistrate on November 8, 1983, be, and is hereby, QUASHED.

So ORDERED.