**REYNOLDS METALS COMPANY,**
**Plaintiff,**

v.

**SECRETARY OF LABOR and U. S.**
**Department of Labor, Defendants.**

**Civ. No. 770215.**

United States District Court,
W. D. Virginia,
Roanoke Division.

Oct. 13, 1977.

George I. Vogel, II, Wilson, Hawthorne & Vogel, Roanoke, Va., for plaintiff.

Joel D. Gusky, U. S. Dept. of Labor, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION and ORDER

TURK, Chief Judge.

Plaintiff Reynolds Metals Company seeks to have the court quash an inspection warrant issued to the defendant Secretary of Labor by the Honorable Samuel G. Wilson, United States Magistrate, United States District Court, Western District of Virginia on October 11, 1977. The court has jurisdiction over this case under 28 U.S.C. § 1337.

Reynolds Metals Company is a Delaware Corporation with its principal place of business located at 6601 Broad Street, Richmond, Virginia. It owns and operates a plant located at 750 Old Abingdon Highway, Bristol, Virginia where it is engaged in the production of aluminum cans. Specifically, the Bristol plant produces "ends" for aluminum beverage containers. The products of the Bristol plant are shipped in interstate commerce.

On September 1, 1977, Compliance Safety and Health Officer Leon Christiansen, of the Roanoke Field Office of the Occupational Safety and Health Administration appeared unannounced at the Bristol plant. He presented his credentials to plant authorities and sought to make a general inspection. Because he did not carry a search warrant, plant authorities refused him entry, whereupon he left. Subsequently, the Secretary sought, and was granted, a warrant for inspection of the Bristol plant.

Acting pursuant to 29 U.S.C. § 657(a),[1] Officer Christiansen applied for a warrant to inspect the Bristol facility on October 11, 1977. In his affidavit in support of his application Officer Christiansen swore to the following facts:

1. On or about Monday, August 29, 1977, he telephoned the Richmond Area Office of the Occupational Safety and Health Administration to inform them that he was going to make an inspection of the Reynolds Metals Company located in Bristol, Virginia, as a general schedule inspection in accordance with OSHA's Field Operations Manual which set forth a priority list for inspections beginning with imminent danger situations, fatality and catastrophe investigations, complaints, follow-up inspections, and general schedule inspections.

2. Prior to making the inspection he checked a computer printout and information available at the Roanoke Field Office to determine whether the Reynolds Metals Company at Bristol, Virginia, had been inspected. His search indicated the Reynolds plant in Bristol, Virginia, had never been inspected by OSHA.

3. At the time he telephoned the Richmond Area Office, there were no imminent danger situations, fatalities or catastrophes, complaints, or follow-up inspections to be made by him. Pursuant to the Field Operations Manual and long-standing instructions concerning how to make general schedule inspections, he consulted OSHA's "Worst-First" list for industries hav-

---

1. 29 U.S.C. § 657(a) is part of the Occupational Safety and Health Act of 1970, 84 Stat. 1590, 29 U.S.C. § 651 et seq., and provides in pertinent part:

(a) In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—

(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

ing the highest incidence of occupational safety and health accidents and injuries to determine which type of facility to inspect next.

4. The "Worst-First" list was compiled by the United States Department of Labor's Bureau of Labor Statistics from data supplied to it from each state which is derived from information obtained from Workmen's Compensation claims. Each industry was given a Standard Industrial Code and was ranked by the frequency of occupational accidents and injuries occurring in each particular type of industry with the most hazardous industries appearing at the top of the list.

5. There were over one thousand separate industries which were ranked on the "Worst-First" list and each industry received a Standard Industrial Code number. The Standard Industrial Code for the metal-can manufacturing industry was 3411.

6. The "Worst-First" list was used by OSHA as a planning guide for general schedule inspections to make certain that industries which have experienced a high incidence of accidents were inspected first thereby maximizing the resources of OSHA in an attempt to reduce the number and severity of occupational accidents and injuries.

7. The "Worst-First" list available to the Roanoke Field Office of OSHA was received during October, 1976, and was compiled from data from the period 1971–1974. There were 34 industries on the list which represented the most hazardous industries in the Nation.

8. The metal-can manufacturing industry appeared 20th on the Roanoke Field Office's "Worst-First" List, placing it within the range of the most hazardous industries in the Nation. Prior to August 29, 1977, the nineteen (19) industries preceding the metal-can manufacturing industry had been inspected by Compliance Safety and Health Officers of the Roanoke Field Office with the exception of the Babcox-Wilcox facility located in Lynchburg, Virginia, which was performing contract work for the United States Navy.

9. The purpose of the inspection sought in this Application for an Inspection Warrant is to determine whether employees of Reynolds Metals Company are exposed to any safety and health hazards resulting from non-compliance with Section 5(a) of the Act and the Safety and Health Standards adopted pursuant to the Act.

10. The inspection and investigation will be conducted during regular working hours or at other reasonable times, within reasonable limits, and in a reasonable manner. The CSHO's credentials will be presented to agents of Reynolds Metals Company, and the inspection and investigation will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness.

11. The inspection and investigation will extend to the workplaces and environments where work is performed by employees of the Reynolds Metals Company, and will include all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all other things therein (including records, files, papers, processes, controls and facilities) bearing on whether Reynolds Metals Company is furnishing to its employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to their employees, and whether Reynolds Metals Company is complying with the Occupational Safety and Health Standards promulgated under the Act and the rules, regulations, and orders issued pursuant to the Act.

12. A return will be made to the court at the completion of the inspection and investigation.

The sole issue before the court is whether the Secretary produced enough evidence in support of his application for the warrant to demonstrate to Magistrate Wilson that probable cause existed for an inspection of the Bristol plant.[2] Both sides concede that if the Secretary adduced enough evidence to demonstrate probable cause that the warrant is valid.

Plaintiff contends that before the warrant may issue, the Secretary must demonstrate that probable cause exists to believe that violations of specific OSHA regulations exist at the Bristol facility. Reynolds challenges the system used to select Reynolds for inspection in this case and argues that specific facts or complaints must form the basis for a finding of probable cause. Reynolds stresses its good safety record at the Bristol plant in support of its position. Plaintiff also argues that because an employer may be subjected to monetary penalties under the act for violations, that a showing of probable cause must be analogous to the showing required in a criminal case.

Defendant contends that probable cause may be established for an OSHA inspection by demonstrating that the inspection is part of a rational plan prepared and approved by the agency in an attempt to effectuate the enforcement of the act. Defendant rejects the position that it must demonstrate that specific violations of the act have taken place at the Bristol plant, or that the act is quasi-criminal in nature and the showing of probable cause is therefore higher. Defendant asserts the facts adduced by agent Christiansen demonstrate probable cause.

Although the Supreme Court has never considered the evidentiary showing required to establish probable cause for issuance of an OSHA inspection warrant, the Court has discussed the warrant requirement and the probable cause showing required in regard to administrative inspections for health and safety violations. The holdings in *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) provide the standards for adjudication of plaintiff's claim.

The *Camara* court held the Fourth Amendment's proscription against unreasonable searches prohibited warrantless housing inspections to enforce municipal safety ordinances. After holding that warrants were required, the court considered the evidentiary showing required to establish probable cause. In considering the probable cause requirement, the court specifically rejected the city's argument that a warrant could only issue if the inspector had probable cause to believe that a particular dwelling contained violations of the applicable municipal ordinance. *Camara, supra* 387 U.S. at 534, 87 S.Ct. 1727.

Mr. Justice White prefaced his discussion of the requirements for probable cause by writing:

In cases in which the Fourth Amendment requires that a warrant to search be obtained, "probable cause" is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness. To apply this standard, it is obviously necessary first to focus upon the governmental in-

---

**2.** Because of the posture of this case, the court need not consider whether the Secretary has authority under the act to conduct warrantless inspections. *Compare Brennan v. Buckeye Industries, Inc.,* 374 F.Supp. 1350 (S.D.Ga.1974) (allowing warrantless inspections) *with Barlow's Inc. v. Usery,* 424 F.Supp. 437 (D.Idaho 1976) (three-judge court) (act unconstitutional), *prob. juris, noted sub nom. Marshall v. Barlow's Inc.,* 430 U.S. 964, 97 S.Ct. 1642, 52 L.Ed.2d 354 (1977); *Dunlop v. Hertzler Enterprises, Inc.,* 418 F.Supp. 627 (D.N.M.1976) (three-judge court) (warrant required); *Brennan v. Gibson's Products, Inc.,* 407 F.Supp. 154 (E.D.Tex.1976) (three-judge court) (warrant required). Reynolds does not contest the authority of Magistrate Wilson to issue the warrant in this case, so the court need not address this issue. *See Northwest Airlines, Inc.,* 437 F.Supp. 533 (E.D.Wis.1977) (magistrate has authority); *Empire Steel Manufacturing Co., v. Marshall,* 437 F.Supp. 873 (D.Mont.1977) (magistrate has authority); *Marshall v. Chromalloy American Corp.,* 433 F.Supp. 330 (E.D.Wis. 1977) (magistrate has authority); *Gilbert and Bennett Manufacturing,* 5 BNA OSH Cas. 1375 (E.D.Ill. April 12, 1977) (magistrate has authority.)

terest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen. For example, in a criminal investigation, the police may undertake to recover specific stolen or contraband goods. But that public interest would hardly justify a sweeping search of an entire city conducted in the hope that these goods might be found. Consequently, a search for these goods, even with a warrant, is "reasonable" only when there is "probable cause" to believe that they will be uncovered in a particular dwelling. 387 U.S. at 534–35, 87 S.Ct. at 1734.

The court found the inspection of designated areas used by city officials in *Camara* reasonable under the Fourth Amendment. The court noted the strong governmental interest in public health and safety served by inspections of designated areas. The court found area inspections had a long history of use in this country; that they were more effective that other techniques for inspection, notably canvassing, in detecting latent defects which might be dangerous; and that since the inspections were neither personal in nature nor aimed at the discovery of evidence of crime, they involved a limited invasion of the citizen's privacy.

The court held probable cause would be made out if "reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling." 387 U.S. at 538, 87 S.Ct. at 1736. The court noted that such standards, which would necessarily vary from one health and safety program to another, could be based upon the passage of time between inspections, the nature of the building, or the condition of the entire area. *Id.* The court held these standards need not depend upon specific knowledge of the condition of the particular dwelling. *Id.*

In *See v. City of Seattle, supra,* the *Camara* holding was extended to include inspections of commercial structures. 387 U.S. at 544, 545–46, 87 S.Ct. 1727. The Supreme Court has adhered to these holdings twice, in *Air Pollution Variance Board of Colorado v. Western Alfalfa Corp.,* 416 U.S. 861, 864, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), and in *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).[3] Although the court has retreated from *Camara* and *See* in two cases,[4] they still represent valid interpretations of the Fourth Amendment.

The district courts have attempted to apply the *Camara* and *See* tests to OSHA applications for inspection warrants. In doing so, the courts have rejected the argument unsuccessfully advanced in *Camara* that the probable cause finding requires a highly particularized showing of a likelihood of violations of OSHA regulations. *See Gilbert and Bennett Manufacturing Company,* 5 BNA OSH Cas. 1375 (E.D.Ill. April 12, 1977). Courts have generally accepted as valid, for probable cause purposes, OSHA's inspection plans and industry-wide enforcement programs. *See Gilbert and Bennett Manufacturing Company, supra. Cf. Northwest Airlines, Inc.,* 437 F.Supp. 533 (E.D.Wis.1977) (no pattern or plan es-

**3.** The court wrote:

In *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930, the court held that administrative inspections to enforce community health and welfare regulations could be made on less than probable cause to believe that particular dwellings were the sites of particular violations. *Id.,* at 534–536, 538, 87 S.Ct. 1727. Yet the Court insisted that the inspector obtain either consent or a warrant supported by particular physical and demographic characteristics of the areas to be searched. *Ibid. See also See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943. The search in the present case was conducted in the unfettered discretion of the members of the Border Patrol, who did

not have a warrant, probable cause, or consent. The search thus embodied precisely the evil the Court saw in *Camara* when it insisted that the "discretion of the official in the field" be circumscribed by obtaining a warrant prior to the inspection. *Camara, supra* 387 U.S. at 532–33, 87 S.Ct. 1727. 413 U.S. at 270, 93 S.Ct. at 2538.

**4.** *See United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (warrantless search of federally-licensed gun dealer constitutional); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (warrantless search of federally-licensed liquor dealer constitutional).

tablished to allow OSHA inspection of Northwest).

Although courts have been receptive to OSHA's industry-wide statistics when used to support warrant applications, the use of statistics in the foundry industry has produced differing results. The court in *Marshall v. Chromalloy American Corp.*, 433 F.Supp. 330 (E.D.Wis.1977) found probable cause based solely upon the high injury and illness rate found throughout the metal-working industry. However, these same industry-wide statistics were rejected in *Marshall v. Shellcast Corporation,* 5 BNA OSH Cas. 1689 (N.D.Ala. July 26, 1977). Moreover, the holding in *Shellcast* is vitiated in large measure because the court noted the foundries had been inspected twice by OSHA, with the last visit less than two years before the application for a warrant. *Id.* at 1691. In addition to OSHA industry-wide statistics and enforcement patterns, a history of past violations, *Usery v. Northwest Orient Airlines, Inc.,* 5 BNA OSH Cas. 1617 (E.D.N.Y. July 10, 1977), current complaints from employees regarding work conditions, *Empire Steel Manufacturing Co. v. Marshall,* 437 F.Supp. 873 (D.Mont.1977), or any other set of appropriate facts, *Dunlop v. Able Contractors, Inc.,* 4 BNA OSH Cas. 1110 (D.Mont. Dec. 15, 1975), has been sufficient to allow OSHA to obtain a warrant for inspection.[5]

The defendant Secretary has sought to establish the validity of the Reynolds inspection based upon the *Camara* requirements. He first argues that during the entire existence of OSHA, six years, the Bristol facility has never been inspected for potential danger to the workers. He asserts that this time lapse alone is a valid administrative standard of the kind noted in *Camara* as supplying probable cause for an inspection warrant. *See Camara, supra* 387 U.S. at 538, 87 S.Ct. 1727.

The Secretary asserts as a second independent basis for the inspection the argument that OSHA procedures employed to select Reynolds for this inspection, including the "Worst-First" list, are the functional equivalent of the geographic area plans for inspection used and approved in *Camara.* Defendant claims its procedures are rational, nondiscriminatory and are reasonable administrative standards employed to effectuate the governmental policy of enforcing the act.

Plaintiff challenges the methodology employed to select it for inspection under the general schedule program, to tabulate the "Worst-First" list, and the list's validity and application to the Bristol plant.

The Occupational Safety and Health Act of 1970, 84 Stat. 1590, 29 U.S.C. § 651 *et seq.* evidences a strong governmental policy that every worker in the United States should be afforded a safe working environment. *See Atlas Roofing Company, Inc. v. Occupational Safety and Health Review Commission,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). As in *Camara,* this court finds that inspections will best effectuate the goals of the law, because OSHA inspectors will detect latent defects, and that no suitable equivalent to actual inspections exists. *Camara, supra* 387 U.S. at 537, 87 S.Ct. 1727. The court further finds the inspection to be reasonable within the meaning of the Fourth Amendment. The court finds the methods and procedures employed by the Secretary and his agents in OSHA are "reasonable administrative standards" within the meaning of *Camara,* and therefore probable cause has been established for this inspection. Although the court notes OSHA might have selected any one of several methods to determine which industries and plants would be inspected, the instant plan appears rational and nondiscriminatory, and as such is sufficient to establish probable cause for the inspection warrant.

The use of time between inspections as a manner of selecting plants to be inspected, specifically approved in *Camara,* is appropriate in this case, because this plant has

---

**5.** Plaintiff's reliance upon the holding in *Usery v. Centrif Air Machine Co., Inc.,* 424 F.Supp. 959 (N.D.Ga.1977) is misplaced. The *Centrif* case was not a ruling upon an application for an inspection warrant, but instead was a denial of a motion to compel Centrif to allow a field inspection. The court did not consider what showing would be needed to establish probable cause for a warrant because no application was before the court. *Id.* at 961 n. 4, 962.

never been inspected. *Cf. Marshall v. Shellcast Corporation, supra.* Similarly, the methodology employed to select the metal-fabricating industry is also a rational method, the equivalent of the area inspection plan approved in *Camara.* These plans are systematic, rational, and have not been applied in an arbitrary or discriminatory manner. Therefore, they establish probable cause for the warrant issued October 11, 1977.

The holding of the court is not altered because the act allows criminal penalties in appropriate circumstances. Until *Camara* is modified or overruled, it controls the disposition in this case, and the court is not free to substitute a requirement of a higher standard of probable cause because it feels the act is "quasi-criminal" in nature. Additionally, the Supreme Court has shown on one occasion its deference to Congress in passing the act and establishing the agency. *See Atlas Roofing Company, Inc., supra* (Seventh Amendment right to jury trial inapplicable to fines imposed by OSHA).

The execution of the inspection warrant is hereby stayed for a period of ten days to allow plaintiff to seek review of this opinion. The motion to quash the inspection warrant issued October 11, 1977 is hereby denied.