Lynn MARTIN, Secretary of Labor,*
United States Department of
Labor, Appellant,

v.

INTERNATIONAL MATEX TANK TER-
MINALS—BAYONNE, Appellee.

No. 90–5776.

United States Court of Appeals,
Third Circuit.

Argued Feb. 22, 1991.

Decided March 22, 1991.

---

* Lynn Martin succeeded Elizabeth Dole as Secretary of Labor on February 22, 1991. Pursuant to Rule 43(c) of the Federal Rules of Appellate Procedure, the court has substituted her as a party in this action.

Robert P. Davis, Sol. of Labor, Cynthia L. Attwood, Associate Sol. for Occupational Safety and Health, Ann Rosenthal, Counsel for Appellate Litigation, Edward O. Falkowski (argued), Washington, D.C., for appellant.

Donald A. Robinson (argued), Thomas D. Ruane, Robinson, St. John & Wayne, Newark, N.J., for appellee.

Before GREENBERG and COWEN, Circuit Judges, and BUCKWALTER, District Judge.[**]

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

The Secretary of Labor appeals from a July 6, 1990, order of the district court quashing an administrative search warrant for the facility of International Matex Tank Terminals—Bayonne ("International Matex") and dismissing her complaint for an order holding International Matex in civil contempt for refusing to honor the search warrant. Because we conclude, contrary to the district court, that the magistrate had probable cause to issue a search warrant for a "wall-to-wall" inspection of the facility, we will reverse and remand for further proceedings.[1]

### I. *FACTS AND PROCEDURE*

International Matex employs approximately 120 people in its Bayonne, New Jersey, facility at which it receives, stores, blends, and ships bulk liquid petroleum products. On September 25, 1989, the Occupational Safety and Health Administration ("OSHA") received a written complaint from Dennis P. Collins, the Mayor of Bayonne, alleging that International Matex's facility had been the site of several gas tank leaks between August 1986 and August 1989. The mayor also contended that he had received anonymous complaints about International Matex's facility, stating that:

(1) Poor housekeeping exists in the Maintenance Shop Building.

(2) Employees are forced to work overtime.

(3) There are no toilet facilities or water in the dock area.

(4) There is no shower in the dock or pier area for purposes of assisting employees in the event of a product spill.

(5) Apparently some management personnel are living on the third floor of the main office.

(6) The west side of pier # 1 and the east side of pier # 4, it is represented are in a total state of disrepair and therefore not safe.

(7) A further representation is that on pier # 7 hoses are strewn all over the place.

(8) It is further alleged that respirators and goggles to be used for product use are not always in evidence.

(9) Additionally, it is represented that the area in back of tank #'s 1701, 1702 and 1704, in the center of the plant area, there possibly exists contamination.

(10) Further representation concerns a spill of # 6 oil at approximately 6:30 a.m. on September 4th, 1989 that was not reported by the company but called in to Police Headquarters by an employee at 1:00 a.m. on Tuesday, September 5th.

(11) A final allegation represents that behind tank # 6206, phenol and other product have been buried underground and covered over.

App. at 25–26.

Inasmuch as certain of these allegations, if true, would constitute serious violations of the Occupational Safety and Health Act of 1970 ("OSH Act" or "the Act"), 29 U.S.C. §§ 651–678, OSHA assigned Compliance Officers Jane Secor and Steve Sawyer to visit the facility.

[**] Honorable Ronald L. Buckwalter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[1]. The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1337, 1345. This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The Secretary timely filed a notice of appeal on September 4, 1990.

On January 23, 1990, these officers visited the facility and conferred with Dennis M. Barbarise, International Matex's Administrative Manager, about the complaint. Barbarise told them that International Matex would cooperate and thereafter the compliance officers reviewed various safety programs and minutes of safety meetings. According to Barbarise, that afternoon, "the Officers expressed an interest in conducting an inspection of the entire facility." The compliance officers inspected Pier No. 1 and its contiguous areas the following day. They found several minor violations and, in addition, concluded that Pier No. 1 was in "imminent danger" and threatened to obtain an order closing the pier unless repair work commenced right away. Consequently, International Matex developed a plan of short term remedial work to address OSHA's concerns, to be completed within 14 days.

On January 31, 1990, the compliance officers inspected the Maintenance Department and, on February 2, 1990, they returned to inspect the coal pier. According to the affidavit of OSHA's Area Director, Robert Kulick, the compliance officers discovered the following violations during this consensual inspection:

[N]o Hazard Communications (29 CFR 1910.1200) Program appears to exist at these premises; no confined space procedures appear to have been developed or implemented, although [the compliance officers] have observed and learned that employees are required to enter tanks and other vessels, confined spaces, that contain or contained hazardous substances; employees are required to wear respirators routinely throughout the facility, but no respirator program, required by OSHA standards, appears to have been established or implemented; housekeeping—(29 CFR 1910.106(b))— storage tanks for hazardous materials lack diking, while weeds and combustible are adjacent to the tanks; fire fighting— two fire fighting trucks with signs, "fire rescue" were observed, but evaluation with OSHA standards (29 CFR 1910.156) must still be investigated; after the limited view my [compliance officers] have

observed of the electrical hazards, there appear to be electrical hazards present to a large extent everywhere, which could result in electrocution hazards, or fire/explosion hazards.

App. at 22–23.

When the compliance officers returned on February 9, 1990, Barbarise told them that, if OSHA wanted to continue its inspection, it would need a search warrant. At this time, the compliance officers had seen approximately thirty percent of the facility.

On March 12, 1990, the President of Local 8–406 of the Oil, Chemical & Atomic Workers International, Charles Horvath, sent a letter to OSHA repeating allegations of safety violations including electrical hazards on the piers, at tank locations, and at pump areas; the absence of safety showers; ground contamination from leaky pipes and tanks; poor house cleaning throughout the plant; the condition and availability of safety equipment; and the inadequacy of safety programs for fire safety, vessel entry, and respirator training. International Matex contends that this action was in retaliation for its winning a protracted strike dispute six months earlier.

On April 2, 1990, OSHA presented to a federal magistrate an application for a warrant to inspect the entire facility without proper supporting affidavits. The magistrate nonetheless issued the warrant on April 5, 1990. While OSHA attempted to execute the warrant it ultimately returned it unexecuted. OSHA presented a second application to the magistrate on April 27, 1990. Tracking the language of the Act, the application states that:

[t]he desired inspection and investigation is mandated ... as a special inspection in accordance with section 8(f)(1) of the Act....

... In addition, the desired inspection and investigation is part of an inspection and investigation program (described in more detail in the accompanying affidavit) designed to assure compliance with

the Act and is authorized by Section 8(a) of the Act.

App. at 7.

The affidavits of Compliance Officer Secor and OSHA Area Director Kulick, and the written complaints of Mayor Collins and Union President Horvath were attached to the application. Secor's affidavit stated that, during the consensual inspection, "[u]sing accident/illness records, I calculated the firm's LWDI (lost workday incident rate) to be 15.4, which is more than three and one-half times above the national rate of 4.2." She also stated that she found "numerous instances of conditions which may constitute violations of the general OSHA standards." Additionally, her affidavit stated that a January 1987 limited inspection after a fire revealed one serious and one other violation.

The magistrate issued a warrant for as many as four OSHA inspectors and for up to 60 days:

> to enter *without delay* the [premises] during regular working hours or at other reasonable times, and to inspect and investigate in a reasonable manner and to a reasonable extent (including but not limited to the taking of photographs and samples, which may be done by attaching monitoring devices to employees, and to question privately any employer, owner, operator, agent or employees of the establishment on the premises during working hours), the workplace or environment where work is performed by employees of the employer, and all pertinent conditions including structures, machines, apparatus, devices, equipment, materials, and all other things therein (including records required by the Act and regulations and standards, but excluding all employee medical records) ...

App. at 37 (emphasis in original).

When International Matex refused to permit the inspection, the Secretary filed this suit in the United States District Court for the District of New Jersey seeking an order holding it in contempt for its refusal to honor the warrant. International Matex moved to quash the warrant and to dismiss the complaint, alleging that the Secretary had failed to demonstrate that probable cause supported the warrant.

In ruling on International Matex's motion, the district court, in an opinion dated July 6, 1990, first questioned whether the warrant was issued pursuant to section 8(a) of the Act, which grants the Secretary authority to conduct reasonable inspections, or section 8(f), which requires that the Secretary inspect upon reasonable belief that violations alleged in an employee complaint exist. The court concluded that the warrant was issued pursuant to both sections. *Secretary of Labor v. International Matex*, No. 90–1940, slip op. at 8–9 (D.N.J. July 6, 1990) (discussing 29 U.S.C. §§ 657(a), (f)). It relied heavily on the language of the application for the warrant that "the desired inspection and investigation is part of an inspection and investigation program ... designed to assure compliance with the Act and is authorized by Section 8(a) of the Act." The court then reviewed Secor's supporting affidavit which set forth the circumstances of the complaint by Mayor Collins and her personal observations during the voluntary inspection of the facility in January and February 1990. The court also acknowledged the complaint OSHA received from Union President Horvath as material supporting the warrant application. *Id.*

Having concluded that OSHA based its application on both sections 8(a) and 8(f), the court reviewed various precedents discussing section 8(a) inspections, referring to three district court opinions concerned with whether probable cause existed for the warrants involved, an issue dependent on whether the Secretary established that the inspections were pursuant to a program that was not arbitrary: *Marshall v. Weyerhaeuser Co.*, 456 F.Supp. 474 (D.N.J.1978) (OSHA failed to show it followed systematic descent on "Worst–First" list); *Reynolds Metals Co. v. Secretary of Labor*, 442 F.Supp. 195 (W.D.Va.1977); and *In Re Establishment Inspection of Northwest Airlines, Inc.*, 437 F.Supp. 533 (E.D.Wis.1977), *aff'd*, 587 F.2d 12 (7th Cir.1978). According to the district court, the *Reynolds* court held that OSHA's methods were reasonable

administrative standards within *Camara v. Municipal Court*, 387 U.S. 523, 538, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967), dealing with warrant requirements for administrative searches, because the Secretary established that:

> (1) the request was for a general inspection and that no higher priority inspections were pending; (2) the plant had never been inspected; (3) the plant was on the 'Worst First' list; (4) it was ranked 20th out of 34 on the local list; and (5) OSHA had inspected the preceding companies on that list.

*International Matex*, slip op. at 10–11 (citing *Reynolds*, 442 F.Supp. at 200–01).

The court concluded that the warrant application here did not meet the requirements outlined in *Weyerhaeuser* and *Reynolds* for section 8(a) warrants to show that this inspection was not arbitrary or discriminatory.

The court rejected the Secretary's contention that evidence from the voluntary inspection, that is the very high lost workday incident rate ("LWDI") at the plant, could support a finding of probable cause because "the presentation of that evidence to the Magistrate does not cure the previously noted deficiencies in the § 8(a) application." The district court rejected the Secretary's argument that evidence of the high LWDI could support the issuance of an administrative warrant beyond the scope of the employee complaints and distinguished this court's opinion in *Dole v. Trinity Industries, Inc.*, 904 F.2d 867, 873 (3d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990), in which we held that the Secretary could obtain administrative subpoenas for employer documents beyond the subject matter of an initial employee complaint, because this case involved inspections and not subpoenas.

Turning to section 8(f), the court also rejected OSHA's contention that the employee complaints of the mayor and union president provided probable cause to support the administrative warrant. Relying on *In Re Establishment Inspection of Northwest Airlines, Inc.*, the court determined that it need not reach the section 8(f) issue in light of its determination that the section 8(a) application was insufficient to support probable cause. *International Matex*, slip op. at 14. The court stated that "as *Northwest Airlines* instructs, a § 8(f)(1) inspection also requires a detailed 'program' of inspection that must be identified in the warrant application." *Id.* The court held that the entire warrant was defective and that OSHA's argument in the alternative that, if section 8(a) did not apply then section 8(f)(1) applied, was an attempt to circumvent the Supreme Court's standards. *Id.*

The court dismissed OSHA's complaint requesting an order holding International Matex in civil contempt for refusing to honor the warrant, as it concluded that the warrant was not supported by probable cause and International Matex had attempted in good faith to resolve the dispute. *Id.* at 16–17.

On this appeal, the Secretary argues that the district court erroneously assumed that all section 8(a) inspections require that OSHA show an administrative plan containing specific neutral criteria. OSHA contends that it has broad authority to conduct inspections under section 8(a) and is not restricted to "programmed" inspections made pursuant to a plan, but may also establish probable cause by specific evidence of violations including, but not limited to, employee complaints. International Matex argues that the district court properly determined that the Secretary failed to show that it had been selected for inspection by a neutral administrative plan. It continues that the Secretary's Field Operations Manual provides that the order of priority for inspections is first, Imminent Danger Investigations; second, Fatality/Catastrophe Investigations; third, Investigation of Complaints/Referrals; and fourth, Programmed Inspections, and that the Secretary failed to follow this priority system in selecting International Matex for inspection.

■ The district court's determination that the Secretary's application for a warrant failed to establish probable cause is

subject to plenary review. *In Re Establishment Inspection of Midwest Instruments Co.*, 900 F.2d 1150, 1153 (7th Cir. 1990) (review of district court's determination of administrative probable cause is *de novo* ). *See also United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1103 (3d Cir.) (Fourth Amendment challenge to scope of search warrant subject to plenary review), *cert. denied,* —— U.S. ——, 110 S.Ct. 368, 107 L.Ed.2d 354 (1989). But "to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant," we must give great deference to the magistrate's determination that probable cause existed. *Massachusetts v. Upton*, 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984). *See also Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); *In Re Establishment Inspection of Trinity Industries, Inc.*, 898 F.2d 1049, 1050 (5th Cir.1990) (deferential standard applies to magistrate's determining probable cause for OSHA administrative warrant). Subject to a narrow exception not at issue here, the reviewing court may consider only evidence within the four corners of the warrant application to the magistrate. *Donovan v. Mosher Steel Co.*, 791 F.2d 1535, 1537 (11th Cir.1986) (district court abused discretion in ordering discovery beyond face of OSHA's warrant application), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 874, 93 L.Ed.2d 829 (1987); *West Point–Pepperell, Inc. v. Donovan*, 689 F.2d 950, 959 (11th Cir.1982) (judicial review strictly limited to information brought to magistrate's attention).

## II. *DISCUSSION*

### A. *OSHA Inspections*

Section 8(a) of the OSH Act, codified at 29 U.S.C. § 657(a), authorizes the Secretary to conduct searches under certain circumstances:

[T]he Secretary, upon presenting the appropriate credentials to the owner, operator, or agent in charge, is authorized—

(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

Inspections are also mandated under section 8(f) of the OSH Act, codified at 29 U.S.C. § 657(f), which provides:

(1) Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger.... If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists....

■ OSHA is limited in its authority to inspect under these statutory provisions by the Fourth Amendment. In *Camara v. Municipal Court*, 387 U.S. at 534, 87 S.Ct. at 1733, the Supreme Court held that the administrative searches conducted without a warrant procedure in that case violated the Fourth Amendment guarantee against unreasonable searches. *Id.* The Court concluded, therefore, that Camara could not on the basis of the facts alleged, constitutionally be convicted for refusing to consent to an inspection by a San Francisco health inspector because he had a constitutional right to insist that the inspector obtain a warrant to search. *Id.* at 540, 87 S.Ct. at 1737. In setting forth the standard for probable cause to support an administrative search warrant, the Court ex-

amined the governmental interest justifying official intrusion upon a citizen's rights and concluded that the "primary governmental interest at stake is to prevent even the unintentional development of conditions which are hazardous to public health and safety." *Id.* at 535, 87 S.Ct. at 1734. Stating that code enforcement inspections had long enjoyed public acceptance, that the public interest demanded abatement of dangerous conditions, and that such inspections involved a relatively limited invasion of the citizen's privacy, the Court concluded that routine, periodic safety code enforcement inspections were reasonable. *Id.* at 537, 87 S.Ct. at 1735. In light of its conclusion that such searches were reasonable, the Court noted that probable cause to issue a warrant for an administrative search:

> must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (*e.g.*, a multi-family apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.

*Id.* at 538, 87 S.Ct. at 1736.

The Supreme Court later confirmed that this relaxed standard for establishing probable cause for an administrative search warrant applied to OSHA inspections. In *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Court held that, notwithstanding the broad statutory language of section 8(a), OSHA nonconsensual inspections require a search warrant supported by probable cause under the Fourth Amendment; however, the Court distinguished probable cause for such an administrative search from "[p]robable cause in the criminal sense." *Id.* at 320, 98 S.Ct. at 1824. The Court rejected the premise that the Secretary necessarily had to demonstrate probable cause that conditions in violation of the OSH Act existed on the premises; rather, for an administrative search, "a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment].'" *Id.* at 320, 98 S.Ct. at 1824 (quoting *Camara*, 387 U.S. at 538, 87 S.Ct. at 1736). The Court held, therefore, that Barlow's.was "entitled to a declaratory judgment that the Act is unconstitutional insofar as it purports to authorize inspections without warrant or its equivalent and to an injunction enjoining the Act's enforcement to that extent." 436 U.S. at 325, 98 S.Ct. at 1827.

While the Act must, of course, be understood with the foregoing constitutional standards in mind, we agree with the Secretary that nothing in it or any Supreme Court decision confines section 8(a) inspections to programmed inspections pursuant to an administrative plan. The language of section 8(a) suggests a broad grant of authority to the Secretary to conduct reasonable inspections in that it permits entry to any establishment "or other area" to inspect "any such place of employment and all pertinent conditions." 29 U.S.C. § 657(a). The statute is notably devoid of any requirement that inspections be made pursuant to an administrative plan or scheme; Congress could have indicated as much if it intended this restriction. In fact, the legislative history supports the interpretation that section 8(a) is a broad grant of authority to conduct reasonable inspections, in contrast to section 8(f)(1), which is not a grant of authority but rather imposes a requirement that the Secretary inspect under certain circumstances. *See* S.Rep. No. 1282, 91st Cong., 2d Sess. (1970) *reprinted in* 1970 U.S.Code Cong. & Admin.News 5177, 5187–89 (government personnel given right of entry to carry out effective safety and health program and section 8(f) entitles employees to special inspection as soon as practicable upon complaint that health or safety violation exists). *See also Marshall v. Horn Seed Co., Inc.*, 647 F.2d 96, 100 n. 3 (10th Cir.1981); *Burkart Randall Division of Textron,*

*Inc. v. Marshall,* 625 F.2d 1313, 1321 (7th Cir.1980).

Additionally, the Secretary has interpreted section 8(a) as a broad grant of authority subject only to the limitation that inspections be "within reasonable limits" and made "during regular working hours and at other reasonable times" and this interpretation is entitled to deference, if reasonable. *Secretary of Labor v. Aluminum Coil Anodizing Corp.,* 1 O.S.H.Cas.(BNA) 1508, 1509 (Review Comm'n 1974). While this interpretation is limited by the Supreme Court's later decision in *Barlow's,* nothing in *Barlow's* or *Camara* supports the district court's conclusion that the *only* means for the Secretary to establish probable cause for an administrative warrant to search under section 8(a) is by an administrative plan containing specific neutral criteria. Rather, both cases indicate that this means of establishing probable cause is available to the Secretary in addition to the conventional means of establishing probable cause, that is, by specific evidence of a violation. *Barlow's,* 436 U.S. at 320, 98 S.Ct. at 1824 ("probable cause justifying the issuance of a warrant may be based *not only on specific evidence of an existing violation* but *also* on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]' ") (emphasis added); *Camara,* 387 U.S. at 538, 87 S.Ct. at 1736 (probable cause exists "if reasonable legislative or administrative standards for conducting an area inspection are satisfied" for a particular site and that such standards "will *not necessarily* depend on specific knowledge of the condition of the" site) (emphasis added).

This interpretation is widely accepted. *See In Re Establishment Inspection of Cerro Copper Products Co.,* 752 F.2d 280, 282 (7th Cir.1985) (administrative probable cause based on (1) specific evidence of existing violation, *or* (2) reasonable legislative or administrative standards); *West Point–Pepperell,* 689 F.2d at 957 (administrative probable cause based on *either* (1) specific evidence of existing violation, *or* (2) reasonable legislative or administrative stan-

dards); *Donovan v. Federal Clearing Die Casting Co.,* 655 F.2d 793, 796 (7th Cir. 1981) (*Barlow's* Court enunciated *two alternative methods* to establish administrative probable cause: (1) specific evidence of existing violation, and (2) reasonable legislative or administrative standards); *Chicago Zoological Society v. Donovan,* 558 F.Supp. 1147, 1152 (N.D.Ill.1983) (administrative probable cause demonstrated *by one of two avenues:* (1) specific evidence of existing violation, (2) reasonable legislative or administrative standards). We recognize that language from some cases arguably implies that *all* section 8(a) cases must involve an administrative plan and that *all* specific evidence cases are section 8(f)(1) cases; however, we have concluded that on this point the cases are not persuasive and decline to follow them to the extent they suggest that all section 8(a) inspections must be programmed inspections. *See Donovan v. A.A. Beiro Construction Co., Inc.,* 746 F.2d 894, 903 (D.C. Cir.1984); *Donovan v. Sarasota Concrete Co.,* 693 F.2d 1061, 1068 (11th Cir.1982); *Donovan v. Blue Ridge Pressure Castings, Inc.,* 543 F.Supp. 53, 57 (M.D.Pa. 1981).

We conclude, therefore, that the district court erred in its determination that the Secretary was required to show an administrative plan pursuant to which International Matex was selected for inspection under section 8(a); in fact, the Secretary may establish probable cause to inspect by specific evidence of violations at the facility. Having misinterpreted the relevant precedents, the district court erroneously relied on cases which could not be persuasive here, as in those cases there was no specific evidence of violations. *See Northwest Airlines,* 587 F.2d at 15; *Weyerhaeuser,* 456 F.Supp. at 484; *Reynolds Metals,* 442 F.Supp. at 201. These cases simply cannot be helpful on the resolution of the proper inquiry of whether there was probable cause for the warrant in this specific evidence case.

The district court compounded its error when it determined that because no probable cause existed for a section 8(a) inspec-

tion the entire warrant was defective, and it could avoid the effect of the specific complaints under section 8(f). The court relied on *In Re Establishment Inspection of Northwest Airlines, Inc.*, 587 F.2d at 15, for the premise that investigations pursuant to employee complaints must be made pursuant to a plan or program and, having determined no plan existed, it need not reach the section 8(f)(1) issue. *International Matex*, slip op. at 14. In *Northwest Airlines*, the Court of Appeals for the Seventh Circuit held that, because the Secretary's affidavit failed to set forth sufficient information for the magistrate to determine whether there was a reasonable legislative or administrative program to perform the search, a search warrant based on an employee complaint was not supported by probable cause under *Barlow's*. *Northwest Airlines*, 587 F.2d at 15. *Barlow's*, however, addresses only inspections under section 8(a) and does not consider constitutional requirements for section 8(f)(1) inspections based on employee complaints. The *Northwest Airlines* court did not identify a compelling factual difference between that case and *Barlow's;* in *Barlow's*, there was no employee complaint and no specific evidence of violations.

■ Notably, a later opinion from the Court of Appeals for the Seventh Circuit did not suggest that there was a programmed inspection requirement for applications based on employee complaints. *See Burkart Randall*, 625 F.2d at 1322. In addition, other courts of appeals do not consider existence of an administrative plan *a prerequisite* to finding probable cause based on employee complaints. *See, e.g., West Point–Pepperell*, 689 F.2d at 958; *Horn Seed*, 647 F.2d at 104. Because *Barlow's* does not address the constitutional requirements in employee complaint cases, we decline to follow *Northwest Airlines* to the extent it holds that searches based on employee complaints require a programmed inspection. Employee complaints are merely one type of specific evidence that the magistrate may evaluate to determine whether probable cause to inspect is established. Accordingly, the district court erred by relying on *Northwest*

*Airlines* to avoid consideration of whether the complaints of the mayor and the union president sufficed to show probable cause.

B. *Administrative Probable Cause based on Specific Evidence of Violations*

Inasmuch as we have determined that the Secretary could establish probable cause to inspect by specific evidence of violations at International Matex's facility without showing that a neutral administrative plan existed, we turn to the appropriate standard for establishing probable cause for this type of evidence. While the standard for probable cause based on programmed inspections is well established, *see Barlow's*, 436 U.S. at 321, 98 S.Ct. at 1824–25, the quantum and quality of specific evidence to establish probable cause is less clear. We find that standard in *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), in which the Supreme Court held that the Fourth Amendment requires a warrant supported by administrative probable cause for officials to enter to investigate the cause of a fire. In that case the inspection was responsive to individual events and was not programmatic. *Id.* at 507, 98 S.Ct. at 1949. The Court indicated that, although programmed inspections achieved the appropriate balance between the need for the intrusion and the threat of disruption by "broad legislative or administrative guidelines specifying the purpose, frequency, scope and manner,"

> [i]n the context of investigatory fire searches, which are not programmatic but are responsive to individual events, a more particularized inquiry may be necessary. The number of prior entries, the scope of the search, the time of day when it is proposed to be made, the lapse of time since the fire, the continued use of the building, and the owner's efforts to secure it against intruders might all be relevant factors.

*Id.* at 507, 98 S.Ct. at 1949.

*Michigan v. Tyler* has been interpreted to establish that the relaxed administrative standard for probable cause applies both to warrant applications based on specific evi-

dence and those based on inspections pursuant to a plan and we agree. *Horn Seed,* 647 F.2d at 99 n. 2.; *see also West Point–Pepperell,* 689 F.2d at 958.

Setting forth the requirements for probable cause, the Court of Appeals for the Tenth Circuit in *Horn Seed* stated that for warrant applications grounded on specific evidence of violations,

> there must be some plausible basis for believing that a violation is *likely* to be found. The facts offered must be sufficient to warrant further investigation or testing.
>
> By necessity, such a determination requires the magistrate to consider the reliability of the information tendered in support of the application.... Although a 'substantial basis' is not required to credit the information's reliability, there must be some basis for believing that a complaint was actually made, that the complainant was sincere in his assertion that a violation exists, and he had some plausible basis for entering a complaint.... The warrant application must, of course, inform the magistrate of the substance of the complaint so that he can determine whether the alleged conditions, if true, constitute a violation.

*Id.* at 102–03 (emphasis in original) (citations omitted).

That court continued that, for an application based on an employee complaint, the affidavit should set forth, *inter alia,* who at OSHA received the complaint, the source of the complaint, the underlying facts surrounding the complaint, the steps taken to verify the complaint, and any personal observations by the affiant of the premises and past violations. *Id.* at 103.

Likewise, the Court of Appeals for the Eleventh Circuit set forth the standard for probable cause based on specific evidence in *West Point–Pepperell:*

> the evidence of a specific violation required to establish administrative probable cause, while less than that needed to

show a probability of a violation, must at least show that the proposed inspection is based upon a reasonable belief that a violation has been or is being committed and not upon a desire to harass the target of the inspection. This requirement is met by a showing of specific evidence sufficient to support a reasonable suspicion of a violation.

689 F.2d at 958 (citing *Horn Seed,* 647 F.2d at 102).

▮▮▮▮ Considering the information that OSHA presented to the magistrate here, we conclude that probable cause clearly existed under this relaxed administrative standard. The magistrate had before him the written complaints of the mayor and the union president.[2] The mayor's complaint contained specific allegations of violations at the facility based on anonymous complaints that he had received and these allegations were repeated in the union president's letter.

Under *Horn Seed,* we must determine whether the magistrate had "some basis for believing that a complaint was actually made, that the complainant was sincere in his assertion that a violation exists, and he had some plausible basis for entering a complaint." *Horn Seed,* 647 F.2d at 102–03. Because the complaints were attached to the application, the magistrate clearly had a basis for believing that the complaints were actually made. Although International Matex now contends that these charges were politically motivated or retaliatory, this information was not presented to the magistrate and, therefore, this court cannot consider it in determining whether the magistrate's probable cause determination was correct. *See West Point–Pepperell,* 689 F.2d at 959 (judicial review strictly limited to information brought to magistrate's attention).[3]

We, however, need not determine whether these complaints, standing alone, would support a finding of probable cause because the Secretary presented other evi-

---

2. The Secretary's Field Operations Manual provides that the mayor is a suitable representative of employees for purposes of filing a formal complaint.

3. Of course, the motivation for the charges would not necessarily undermine their validity.

dence of violations at International Matex through the affidavits of OSHA employees. Compliance Officer Secor, in her affidavit supporting the application for a warrant, stated "[b]etween January 23 and February 2, I have found numerous instances of conditions which may constitute violations of the general industry OSHA standards found at 29 CFR 1910." According to Kulick's affidavit, the compliance officers discovered during the consensual inspection that "there appear to be electrical hazards present to a large extent everywhere, which could result in electrocution hazards, or fire/explosion hazards." Additionally, the compliance officers determined that International Matex had failed to implement required safety measures such as a hazard communications program, confined space procedures, and a respirator program, even though employees were required to wear respirators throughout the facility. They also observed that some storage tanks for hazardous materials were inadequate.

This information is reliable because it is based on the first hand knowledge of Officer Secor, an experienced inspector who spent several days inspecting the facility. *See Plum Creek Lumber Co. v. Hutton,* 608 F.2d 1283, 1287 (9th Cir.1979) (employee complaints, compliance officer's observations, and accident records are ample evidence to support finding of probable cause). Her first hand observations corroborate the union president's allegations about widespread electrical hazards and inadequate safety programs for fire safety, vessel entry, and respirator training and, therefore, the affidavit enhances the credibility of his complaint.

Additionally, OSHA presented the magistrate with Secor's determination that International Matex's LWDI rate was three and a half times the national rate. Secor based her calculations on employee accident/illness records reviewed during the consensual inspection and, therefore, the result is reliable. Such a wide deviation from the national rate provides a "plausible basis for believing that a violation is *likely* to be found." *Horn Seed,* 647 F.2d at 102 (emphasis in original).

We have no trouble concluding that these materials established probable cause under the relaxed administrative standard for OSHA inspections. The evidence of specific violations, particularly the observations of Compliance Officer Secor that electrical hazards permeated the facility, showed that the proposed inspection was "based upon a reasonable belief that a violation has been or is being committed." *West Point–Pepperell,* 689 F.2d at 958. This conclusion, however, does not end our inquiry because we must determine the appropriate scope of a warrant supported by such evidence.

C. *Appropriate Scope of the Inspection*

The magistrate's broad warrant for as many as four OSHA inspectors "to inspect and investigate in a reasonable manner and to a reasonable extent ... the workplace or environment where work is performed by employees of the employer, and all pertinent conditions including structures, machines, apparatus, devices, equipment, materials, and all other things therein (including records required by the Act and regulations and standards, but excluding all employee medical records)" clearly authorized a wall-to-wall inspection of International Matex's facility. For warrant applications based on employee complaints, a wall-to-wall search in some cases may not be justified for "the scope of the inspection must bear an appropriate relationship to the violations alleged in the complaint." *Marshall v. North American Car Co.,* 626 F.2d 320, 324 (3d Cir.1980). *But see Burkart Randall,* 625 F.2d at 1325 (inspection need not be limited in scope to the substance of the complaint); 29 C.F.R. § 1903.11(b) (inspections pursuant to employee complaints "shall not be limited to matters referred to in the complaint."). Based on the language of section 8(f)(1), the *North American Car* court rejected the Secretary's argument that 29 C.F.R. § 1903.11, which provides that an inspection based on an employee complaint is not limited to the matters raised in the complaint, permitted a wall-to-wall search of any facility from which she received an employee complaint. *North*

*American Car,* 626 F.2d at 324. The court determined that Congress expressed a requirement in the language of section 8(f)(1) that the scope of the inspection be related to the complaint. *Id.*

Where a programmed inspection authorizes the search, however, this court has held that these restrictions are not applicable and OSHA may conduct a wall-to-wall inspection of the facility. In *Pennsylvania Steel Foundry & Machine Co. v. Secretary of Labor,* 831 F.2d 1211, 1216 (3d Cir.1987), we upheld the validity of a plant-wide search, even though earlier infractions were limited to dust and noise violations, because the search warrant was validly based at least in part on a national enforcement plan for foundries and was, therefore, permitted under *Barlow's* and section 8(a). *Id.* We found that cases limiting the scope of warrants based on employee complaints under section 8(f) were inapposite as section 8(a) applied. *Id.* Notably, a wall-to-wall inspection implements the broad remedial purpose of the OSH Act to ensure that employees are provided a safe workplace. *See Burkart Randall,* 625 F.2d at 1324–25.

■ Because the search warrant here was not predicated solely on employee complaints nor on a programmed inspection, neither *North American Car* or *Pennsylvania Steel* is controlling and it is unclear whether the "appropriate relationship" test of *North American Car* for inspections predicated on employee complaints under section 8(f)(1) applies to section 8(a) searches as well. We find it unnecessary, however, to determine whether this restriction extends to warrants based on specific evidence of discrete and isolated violations under section 8(a) because, here, specific evidence provides that violations permeated the entire facility; thus, a wall-to-wall inspection was reasonable. Kulick in his affidavit indicated that "there appear to be electrical hazards present to a large extent everywhere, which could result in electrocution hazards, or fire/explosion hazards," and Horvath in his letter said there was poor house cleaning throughout the plant. While the mayor's and union president's complaints alone might have led to a restricted inspection, these complaints were not made in isolation and, when considered with the personal observations of the compliance officers, no such restriction was necessary.

Although we note that our previous decision in *Dole v. Trinity Industries* tacitly approves of the practice, we likewise find it unnecessary to determine whether a high LWDI rate alone can support a broader inspection than indicated by an employee complaint because the magistrate was presented with other evidence here. *See* 904 F.2d at 873 (OSHA's policy to review records to determine LWDI is "entirely appropriate" and such records may trigger comprehensive plant inspection upon issuance of warrant). The cumulative evidence of International Matex's high LWDI rate, the employee complaints, and the personal observations of the compliance officer during the consensual inspection provided a "plausible basis for believing that [violations were] likely to be found" throughout International Matex's facility. Thus, the magistrate did not err in issuing a warrant for a plant-wide inspection under these circumstances.

### D. *Civil Contempt*

■ Finally, we consider the district court's denial of the Secretary's petition for an order holding International Matex in civil contempt for its refusal to comply with the search warrant. On appeal, the denial of a civil contempt citation is reviewed under the abuse of discretion standard. *Littlejohn v. BIC Corp.,* 851 F.2d 673, 683 (3d Cir.1988). The court will reverse only when the denial is based on an error of law or a clearly erroneous finding of fact. *Id.* The district court based its denial of the Secretary's petition to hold International Matex in contempt on its erroneous conclusion that there was no probable cause for the warrant. Inasmuch as the district court relied on an erroneous legal conclusion, we will reverse and remand the matter for further proceedings.

## III. *CONCLUSION*

The district court erred when it determined that the only means by which the Secretary could establish probable cause to support an inspection warrant was by a programmed inspection pursuant to a neutral administrative plan. The court compounded this error when it concluded that even employee complaints must be investigated pursuant to a plan. Because the magistrate had ample specific evidence, including the first-hand observations of the compliance officer, to show "a plausible basis for believing that [violations were] likely to be found," *see Horn Seed*, 647 F.2d at 102, throughout the plant, the wall-to-wall warrant was supported by administrative probable cause to inspect and was not overly broad. We will, therefore, reverse the order of the district court of July 6, 1990, quashing the search warrant and dismissing this action and will remand the case to the district court for further proceedings consistent with this opinion.